# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED DAIRY, INC.** *and* **TYLER MOUNTAIN WATER COMPANY, INC.**, <br><br> Plaintiffs, <br><br> v. <br><br> **BAYSHORE INDUSTRIAL, LLC** *and* **U.S. ARAGONITE ENTERPRISES, LLC,** <br><br> Defendants. | Civil Action No. 14-1644 |

## MEMORANDUM OPINION

### I. Findings of Fact

### A. Background Facts

FOF 1)  United Dairy, Inc. ("United Dairy") and Tyler Mountain Water Company, Inc. ("Tyler Mountain") (collectively, "plaintiffs") filed a complaint in this action on December 4, 2014 against Bayshore Industrial, LLC ("Bayshore") and U.S. Aragonite Enterprises, LLC ("U.S. Aragonite") (collectively, "defendants"). (ECF No. 1.)

FOF 2)  Plaintiffs allege that defendants supplied a material, called "Oshenite," for use in manufacturing plastic beverage containers that failed to adequately perform, resulting in financial losses to plaintiffs. (ECF No. 1.)

FOF 3)  Plaintiffs assert eight causes of action against defendants in the complaint including, breach of contract, breach of express warranty, breach of implied warranty of merchantability, fraudulent inducement, strict liability, negligence, fraudulent/intentional misrepresentation, and negligent misrepresentation. (ECF No. 1 at 9-17.)

FOF 4) Bayshore filed an answer and affirmative defenses to plaintiffs' complaint, and cross-claims against U.S. Aragonite on March 9, 2015, which documents Bayshore amended on March 13, 2015 and July 24, 2015. (ECF Nos. 10, 12, 40.)

FOF 5) U.S. Aragonite did not enter an appearance in this matter, and did not file a responsive pleading to plaintiffs' complaint, and on March 31, 2015, the Clerk of Court entered default against U.S. Aragonite. (ECF No. 18.)

FOF 6) Plaintiffs thereafter filed a motion for default judgment against U.S. Aragonite. (ECF No. 20.)

FOF 7) The court held a hearing on the motion for default judgment on July 6, 2015, to address matters concerning service of process on U.S. Aragonite, personal jurisdiction over U.S. Aragonite, and the appropriate amount of damages. (ECF No. 42 at 87.)

FOF 8) As directed by the court, plaintiffs notified U.S. Aragonite about the July 6, 2015 evidentiary hearing by sending a letter, via certified mail, to U.S. Aragonite's registered agent and by hand delivering and sending that same letter to one of the managing members of U.S. Aragonite at his known business office in Salem, Massachusetts. (ECF Nos. 29, 41; Hrg. Ex. 2.)

FOF 9) U.S. Aragonite did not appear at the July 6, 2015 hearing.

FOF 10) Exhibits were entered into evidence at the hearing and Mr. Timothy Griglack ("Griglack"), a United Dairy representative, and Mr. Richard Merrill ("Merrill"), a Tyler Mountain representative, testified. (ECF No. 42.)

FOF 11) Plaintiffs submitted additional documentary evidence in support of their request for default judgment after the hearing. (ECF Nos. 33-39, 41.)

FOF 12)  Plaintiffs thereafter filed a stipulation voluntarily dismissing their claims against Bayshore, without prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). (ECF No. 43.)

    FOF 12(a):  The stipulation does not reference Bayshore's cross-claims against U.S. Aragonite.

    FOF 12(b):  The court is aware that the Clerk of Court terminated Bayshore as a party to this litigation on August 13, 2015.  The court is likewise aware that Bayshore's cross-claims are for contribution and indemnity.

    FOF 12(c):  Bayshore has not, however, filed a notice voluntarily dismissing its cross-claims against U.S. Aragonite.

FOF 13)  On August 13, 2015, plaintiffs filed their proposed filings of fact and conclusions of law in support of their motion for default judgment. (ECF No. 44.)

**B. Service of Process**

FOF 14)  According to certified records issued by the Florida Secretary of State on July 23, 2015, the principal office of U.S. Aragonite is located at 3400 Tamiami Trail North, Suite 201, Naples, Florida 34103. (ECF No. 41 at 3.)

FOF 15)  According to certified records issued by the Florida Secretary of State on July 23, 2015, U.S. Aragonite's registered agent is Scott M. Grant, Esquire whose address is 3400 Tamiami Trail N., Suite 201, Naples, Florida 34103. (Id. at 4.)

FOF 16)  According to certified records issued by the Florida Secretary of State on July 23, 2015, Marc Goldenberg is one of two managing members of U.S. Aragonite. (Id. at 3.)

FOF 17)   According to communications received by Griglack, Marc Goldenberg held himself out to be U.S. Aragonite's President and Chief Operating Officer. (ECF No. 35-3 at 2, 8.)

FOF 18)   In communications to United Dairy and Tyler Mountain in 2012 and 2013 about Oshenite, U.S. Aragonite listed its business address as 123 Weatherly Drive, Salem, Massachusetts. (ECF No. 35 ¶¶ 4-8; ECF Nos. 35-1 to 35-3; ECF No. 36 ¶¶ 4-5; ECF Nos. 36-1 to 36-2.)

FOF 19)   In press releases issued by U.S. Aragonite in 2011, 2012, and 2013 about Oshenite, U.S. Aragonite listed its business location as "Salem, Massachusetts." (ECF No. 35-3 at 4-12.)

FOF 20)   United Dairy and Tyler Mountain commenced this civil action on December 4, 2014 against U.S. Aragonite and Bayshore.  The summons originally issued to U.S. Aragonite in this matter was reissued on February 4, 2015. (ECF Nos. 1, 6-7.)

FOF 21)   Plaintiffs' counsel mailed copies of the summons and complaint to U.S. Aragonite, via U.S. certified mail, at its principal office at 3400 Tamiami Trail North, Suite 201, Naples, Florida 34013. (ECF No. 34-1 at 2.)   The certified mail return postcard indicates that an agent of U.S. Aragonite received the mailing on February 6, 2015. (Id.)

FOF 22)   On February 6, 2015, at 12:10 p.m., the summons and complaint were hand delivered to Marc Goldenberg at 123 Weatherly Drive, Salem, Massachusetts by James M. Barina, a constable in Salem, Massachusetts. (ECF No. 8.)

## C. Subject-Matter Jurisdiction

FOF 23)     United Dairy is an Ohio corporation having its principal place of business located in Ohio. (ECF No. 1 ¶ 1; ECF No. 42 at 18.)

FOF 24)     Tyler Mountain is a West Virginia corporation having its principal place of business located in West Virginia. (ECF No. 1 ¶ 2; ECF No. 42 at 66.)

FOF 25)     Bayshore is a limited liability company ("LLC") organized and existing under the laws of the state of Texas. (ECF No. 1 ¶ 3.)  A. Shulman, Inc., which is headquartered in Ohio, is the sole member of Bayshore. (ECF No. 46 ¶ 3.)  The record is devoid of any evidence concerning A. Shulman, Inc.'s state of incorporation. (Id.)

FOF 26)     U.S. Aragonite is a Florida LLC, the managing members of which are Phillip Rapp and Marc Goldenberg, both of whom list Florida addresses in the company's articles of organization. (ECF No. 41 at 3.)  There is evidence in the record that Marc Goldenberg conducts business on behalf of U.S. Aragonite from an address in Massachusetts. (ECF Nos. 35-36.)

FOF 27)     The record reflects that the amount in controversy exceeds $75,000. (ECF No. 1 ¶ 5; Hrg. Exs. 6-12.)

## D. Personal Jurisdiction

FOF 28)     Griglack was Director of Operations for United Dairy in 2012 and 2013, and is currently the director of all operations for United Dairy. (ECF No. 42 at 18.)

FOF 29)     Griglack's business office is in Uniontown, Pennsylvania, and United Dairy's Uniontown location houses approximately one hundred forty (140) United Dairy employees. (Id.)

FOF 30)     Among the job duties that Griglack carries out from his Uniontown, Pennsylvania office is to oversee the manufacturing of United Dairy's plastic beverage containers at United

5

Dairy's three manufacturing plants, including the plant in Uniontown, Pennsylvania. (Id. at 19.)

FOF 31)   Griglack is also responsible for the business relationship between United Dairy and Tyler Mountain under which Tyler Mountain manufactures plastic beverage containers for United Dairy's Charleston, West Virginia facility. (Id. at 19-20.)

FOF 32)   In 2012 and 2013, Mr. Rock Newell ("Newell") held himself out to Griglack as the Director of Business Development at U.S. Aragonite. (Id. at 24; Hrg. Ex. 3.)

FOF 33)   During the year 2012, Newell had at least ten in-person meetings with Griglack at United Dairy's facility in Uniontown, Pennsylvania for the purpose of selling the Oshenite product to Plaintiffs. (ECF No. 42 at 22.)

FOF 34)   During the years 2012 and 2013, Newell and other representatives from U.S. Aragonite, including Tim Notter, Marc Goldenberg, and Steve Thomas, conducted business on behalf of U.S. Aragonite by sending hundreds of emails to Griglack for the purpose of selling the Oshenite product to Plaintiffs. The emails were received by Griglack at his United Dairy office in Uniontown, Pennsylvania. (Id.)

FOF 35)   During the years 2012 and 2013, Newell and other representatives from U.S. Aragonite, including Tim Notter, Marc Goldenberg, and Steve Thomas conducted business on behalf of U.S. Aragonite by making hundreds of telephone calls to Griglack at his United Dairy office in Uniontown, Pennsylvania for the purpose of selling the Oshenite product to Plaintiffs. (Id. at 23, 31.)

FOF 36)   Newell and other representatives from U.S. Aragonite made express representations to Griglack, including, but not limited to, that Oshenite was a suitable material for use in the manufacture of United Dairy's plastic beverage containers, Oshenite would produce cost savings to United Dairy, and Oshenite was an environmentally friendly product.

(Id. at 26-30, 31.)

FOF 37)   Representatives from U.S. Aragonite falsely and erroneously represented to Griglack that Oshenite had previously been used with success in the manufacture of plastic beverage containers and showed Griglack a plastic beverage container that was purportedly made with 30% Oshenite. (Id. at 37.)

FOF 38)   Representatives from U.S. Aragonite knew and failed to disclose to Griglack that United Dairy could or would experience inconsistencies with using the Oshenite product in the manufacture of United Dairy's plastic beverage containers. (Id. at 38.)

FOF 39)   Representatives from U.S. Aragonite knew and failed to disclose to Griglack that the Oshenite product had an inconsistent particle size and therefore would produce inconsistent results when manufacturing plastic beverage containers. (Id. at 38.)

FOF 40)   As a result of and in reliance upon the false, misleading, and erroneous representations about the suitability and benefits of using Oshenite in the manufacture of plastic beverage containers, which representations were made by U.S. Aragonite representatives to Griglack at his United Dairy office in Uniontown, Pennsylvania, United Dairy purchased and used Oshenite in the manufacture of its plastic beverage containers in 2012 and 2013. (Id. 32-33.)

FOF 41)   In 2012 and 2013, Merrill was the President of Tyler Mountain. (Id. at 65-66.)

FOF 42)   In 2012 and 2013, Tyler Mountain was manufacturing quart-sized, pint-sized and eight-ounce plastic beverage containers for United Dairy's Charleston, West Virginia facility. (Id. at 19-20.)

FOF 43)  After meeting with Griglack, representatives from U.S. Aragonite contacted Merrill regarding the purchase and use of Oshenite in the manufacture of the plastic beverage containers it was producing for United Dairy. (Id. at 71.)

FOF 44)  Representatives from U.S. Aragonite made express representations to Merrill, both orally and by sending emails and product brochures, that Oshenite would reduce the energy costs of manufacturing plastic beverage containers, was an environmentally friendly product, was suitable for use in the manufacturing of plastic beverage containers, and was a "ready-to-go" product. (Id. at 69-70, 74.)

FOF 45)  In reliance upon the representations about the product Oshenite, Tyler Mountain purchased and used the Oshenite product in the manufacture of the plastic beverage containers it manufactured for United Dairy. (Id. at 72.)

FOF 46)  The plastic beverage containers manufactured by Tyler Mountain for United Dairy that used Oshenite contained holes ranging from as small as a pin-hole to as large as a dime, rendering the plastic beverage containers unusable. (Id. at 72-73.)

FOF 47)  The plastic beverage containers that were manufactured using Oshenite were unusable as plastic beverage containers. (Id. at 34.)

FOF 48)  The representations made by U.S. Aragonite about Oshenite were false, misleading, and material, and the Oshenite product failed to perform as promised by U.S. Aragonite.

FOF 49)  The Oshenite product was unsuitable for plaintiffs' use in the manufacture of plastic beverage containers.

### E. Damages

FOF 50)    Griglack testified that United Dairy sustained damages in the amount of $197,489.01 as a result of using defective Oshenite in the manufacture of United Dairy's plastic beverage containers. (ECF No. 42 at 41; Hrg. Exs. 6-10, 12.)

FOF 51)    Merrill testified that Tyler Mountain sustained damages in the amount of $18,658.20 as a result of using defective Oshenite in the manufacture of United Dairy's plastic beverage containers. (ECF No. 42 at 76; Hrg. Exs. 6, 11.

FOF 52)    Griglack explained that after experiencing the holes in their plastic beverage containers, United Dairy manufactured plastic beverage containers with 100% resin in order to ensure customer satisfaction following Oshenite's failure to perform. (ECF No. 42 at 59-60.)  By using 100% resin after Oshenite failed, instead of the mix of resin and calcium carbonate that United Dairy was using before it switched to Oshenite, United Dairy's cost to manufacture eight-ounce plastic beverage containers increased by $31,033.33. (ECF No. 42 at 56-60; Hrg. Ex. 12.)

FOF 53)    Griglack testified that he estimated the increased cost to manufacture all other plastic beverage containers such as half gallons, gallons, quarts, and pints with 100% resin was $35,000.00. (ECF No. 42 at 56-60.)

FOF 54)    As a result of the conduct of U.S. Aragonite as alleged in the claims for fraudulent and negligent misrepresentation, breach of warranty, and products liability, plaintiffs seek total damages in the amount of $282,180.54.

## II. Conclusions of Law

### A. Service of Process

COL 1)   The fundamental purpose of requiring proper service of process is to ensure that the defendant receives notice of the commencement of a legal action and is afforded an opportunity to present his objections. Perlberger v. Caplan & Luber, LLP, 152 F.Supp.2d 650, 653 (E.D. Pa. 2001); see Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

COL 2)   "The party asserting the validity of service bears the burden of proof on that issue." Sims v. City of Phila., 552 F.App'x 175, 177 (3d Cir. 2014).

COL 3)   Service of process is governed by Federal Rule of Civil Procedure 4. Rule 4(h) permits a corporation or other entity, including an LLC, to be served by delivering a copy of the summons and complaint by hand to an officer, managing or general agent, or other agent authorized by law to receive service of process. FED.R.CIV.P. 4(h)(1)(B); Fitzpatrick v. Bank of New York Mellon, 580 F.App'x 690, 693 (11th Cir. 2014); Villanueva v. Account Discovery Sys., LLC, 77 F. Supp.3d 1058, n.2 (D. Colo. 2015); Estate of Klieman v. Palestinian Auth., 547 F.Supp.2d 8, 13 (D.D.C. 2008).

COL 4)   Service on U.S. Aragonite was perfected under Federal Rule Civil Procedure 4(h)(1)(B) when Marc Goldenberg received a copy of the summons and complaint via hand delivery on February 6, 2015, at 123 Weatherly Drive, Salem, Massachusetts. FOF 18-19, 22.

COL 5)   Marc Goldenberg is both an officer and a managing agent of U.S. Aragonite. FOF 16-17.

COL 6)   U.S. Aragonite also received notice of the instant lawsuit when the summons and complaint were received, via certified mail, by an agent of U.S. Aragonite at its principal office in Florida. FOF 21.

## B. Subject-Matter Jurisdiction

COL 7)   A federal court must always ensure that it has subject-matter jurisdiction over a cause of action. Carlsberg Resources Corp. v. Cambria Sav. and Loan Ass'n, 554 F.2d 1254, 1256–57 (3d Cir. 1977).

COL 8)   Under 28 U.S.C. § 1332(a) "district courts ... have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between – (1) citizens of different States." 28 U.S.C. § 1332(a).

COL 9)   In order for a court to exercise diversity jurisdiction over a case, there must be complete diversity of citizenship of adversarial parties, meaning that each defendant must be a citizen of a different state from each plaintiff. 28 U.S.C. § 1332(a)(1); Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 420 (3d Cir. 2010).

COL 10)   A corporation is a citizen of both its state of incorporation and principal place of business. 28 U.S.C. § 1332(c)(1).

COL 11)   The citizenship of an LLC is determined by the citizenship of its members. Carden v. Arkoma Assoc., 494 U.S. 185, 189 (1990); Zambelli, 592 F.3d at 419-20. The principal place of business of an unincorporated entity is therefore irrelevant to determining its citizenship. Johnson v. SmithKline Beecham Corp., 724 F.3d 337 (3d Cir. 2013).

COL 12)   This court presently has diversity jurisdiction over the matter in which default judgment is sought, that is, United Dairy and Tyler Mountain v. U.S. Aragonite.

> COL 12(a):   The record reflects that plaintiff United Dairy is a citizen of Ohio and plaintiff Tyler Mountain is a citizen of West Virginia, and defendant U.S. Aragonite is a citizen of Florida, and possibly Massachusetts. FOF 14-19, 23-26.
>
> COL 12(b):   Although plaintiff United Dairy and defendant Bayshore are both citizens of

11

Ohio, United Dairy and Tyler Mountain have voluntarily dismissed their claims against Bayshore. FOF 12, 25; Grupo Dataflux v. Atlas Global Grp., L.P., 541 U.S. 567, 572-73 (2004) (recognizing, as an exception to the time-of-filing rule, that a jurisdictional defect relating to diversity of citizenship can be cured by dismissal of the party that destroyed diversity); Caterpillar Inc. v. Lewis, 519 U.S. 61 (1996) . Bayshore is no longer litigating claims adverse to United Dairy, with whom it shares a state of citizenship.

COL 12(c):   The record reflects that the matter in controversy exceeds $75,000. FOF 27.

COL 12(d):   This court makes no findings about Bayshore's cross-claims against U.S. Aragonite. To the extent Bayshore intends to litigate those claims, Bayshore will be required to demonstrate that it is not a citizen of the same state as U.S. Aragonite, i.e., Florida, in order to proceed.

C. **Personal Jurisdiction**

COL 13)   District courts may assert personal jurisdiction over nonresident defendants to the extent permissible under the law of the state where the district court sits, and as is consistent with the Due Process Clause of the United States Constitution. FED.R.CIV.P. 4(k); Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001); IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998).  Pennsylvania's long-arm statute authorizes Pennsylvania courts to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the Due Process Clause of the Fourteenth Amendment. 42 Pa. C.S.A. § 5322(b) ("[T]he jurisdiction of the tribunals of this Commonwealth shall extend ... to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed ...."); Mellon Bank (East) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992).  Thus, the statutory and constitutional analysis collapses into a single

inquiry. Poole v. Sasson, 122 F.Supp.2d 556, 558 (E.D. Pa. 2000).

COL 14)   Personal jurisdiction exists when a defendant has "minimum contacts" with the forum state "by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Asahi Metal Indus. Co., Ltd. v. Superior Court of California, 480 U.S. 102, 109 (1987) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).

COL 15)   Even if a defendant has the appropriate level of contacts with a forum, a court's exercise of jurisdiction over it must be reasonable such that asserting jurisdiction based upon those contacts comports with "fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Burger King, 471 U.S. at 476.  Reasonableness is assessed by balancing the burden on the defendant, the forum's interest in adjudicating the dispute, the judicial system's interest in the efficient resolution of disputes, the interests of the several states in furthering fundamental social policies, and the plaintiff's interest in convenient and effective relief.  Id. at 476–77.

COL 16)   A court can assert either specific or general jurisdiction over a defendant. Burger King, 471 U.S. at 472–74.

COL 17)   General jurisdiction requires the defendant to have "continuous and systematic" contacts with the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984).  These contacts need not relate to the subject matter of the litigation. Id. at 415 n.10.  However, general jurisdiction requires "a very high threshold of business activity." Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am., 651 F.2d 877, 891 n.2 (3d Cir. 1981).

COL 18)   Specific jurisdiction exists only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant "should reasonably anticipate being haled into court" in that forum. Remick, 238 F.3d at 255 (quoting World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).  A single contact with a forum can be sufficient to create the required connection, so long as the defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arose out of or relate to those activities."  BP Chemicals Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 259 (3d Cir. 2000) (citing Burger King, 471 U.S. at 472); Grand Entm't Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 483 (3d Cir. 1993).

COL 19)   The Court of Appeals for the Third Circuit has stated that "[m]ail and telephone communications sent by [a] defendant into the forum may count toward the minimum contacts that support jurisdiction," provided that they reflect purposeful conduct directed at the forum. Grand Entm't., 988 F.2d at 482; see Cozen O'Connor, P.C. v. Fischbein, No. 09-4931, 2010 WL 1053220, at *4 (E.D. Pa. Mar. 16, 2010) (finding sufficient minimum contacts based upon at least five letters and one telephone call that were directly related to the loans at issue in the case).

COL 20)   The Court of Appeals for the Third Circuit uses a three-part test to determine whether a court can assert specific jurisdiction over a defendant: (i) the defendant must have purposefully directed its activities at the forum; (ii) the litigation must arise out of or relate to at least one of those activities; and (iii) if the first two requirements have been met, a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice. D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102 (3d Cir. 2009).

COL 21)   The specific jurisdiction analysis is dependent on, and related to, the legal claim asserted by a plaintiff. See Gehling v. St. George's Sch. of Med., Ltd., 773 F.2d 539 (3d Cir. 1985) (finding personal jurisdiction over defendant in wrongful death action with regard to fraudulent misrepresentation and emotional distress claims, but not as to plaintiffs' negligence and breach of contract claims); Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141 (3d Cir. 1992) (examining the issue of personal jurisdiction as to plaintiff's fraud claim separately from plaintiff's breach of fiduciary duty claim); Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987) (describing specific jurisdiction as present when "the particular cause of action sued upon arose from the defendant's activities within the forum state").

COL 22)   In the context of a misrepresentation or fraud claim, courts look to the situs of the statements that allegedly form the basis of the claim, and the location where those statements caused damage. Gehling, 773 F.2d at 544.

COL 23)   For a breach of warranty claim, courts look to factors such as the place where the item was purchased and the citizenship of the purchaser. Arlandson v. Hartz Mountain Corp., 792 F.Supp.2d 691, 698 (D.N.J. 2011).

COL 24)   With respect to claims sounding in products liability, courts look not only to the place of the injury, but to the manufacturer's activities in the forum state related to the allegedly defective product, such as the place of manufacture and sale, and the circumstances under which the product entered the forum state (e.g., due to action of the manufacturer versus the customer). D'Jamoos, 566 F.3d at 102-04.

COL 25)   The record lacks sufficient information for this court to assess whether general jurisdiction could be exercised over U.S. Aragonite.  The court can exercise specific jurisdiction over U.S. Aragonite with respect to each of the legal claims on which plaintiffs seek entry of default judgment.

COL 26)   U.S. Aragonite purposefully directed its activities at Pennsylvania by sending representatives to visit Griglack at his United Dairy office in Uniontown, Pennsylvania and by engaging in regular email and telephone communications with Griglack for the purpose of convincing United Dairy to use Oshenite in the manufacture of its plastic beverage containers. FOF 28-49.

COL 27)   This litigation arises out of and relates to U.S. Aragonite's Pennsylvania contacts because those contacts were made for the purpose of selling Oshenite to plaintiffs, and the causes of action on which plaintiffs seek entry of default judgment stem from U.S. Aragonite's false statements about Oshenite and the ultimate failure of Oshenite to adequately perform. Id.

COL 28)   Having satisfied the first two prongs of the specific jurisdiction analysis, the Court must now consider whether the assertion of personal jurisdiction would be reasonable and comport with "fair play and substantial justice" by balancing the burden on the defendant, the forum's interest in adjudicating the dispute, the judicial system's interest in the efficient resolution of disputes, the interests of the several states in furthering fundamental social policies, and the plaintiff's interest in convenient and effective relief. Burger King, 471 U.S. at 476-77 (1985).

COL 29) Because U.S. Aragonite has minimum contacts with Pennsylvania it must make a "compelling case" that litigation in Pennsylvania would be unreasonable and unfair. O'Connor, 496 F.3d at 324-25. "[W]hen minimum contacts exist, due process demands no more than a reasonable forum." Id. at 325.

COL 30) The third prong of the specific jurisdiction test is satisfied in this case because U.S. Aragonite should have reasonably anticipated being haled into court in Pennsylvania when it solicited United Dairy officials it knew to be located in Pennsylvania, to use its Oshenite product to manufacture its plastic beverage containers. FOF 33-35.

COL 31) With respect to the misrepresentation and fraud claims, the false statements were made to United Dairy officials located in Pennsylvania, during in-personal visits and electronic and telephone communications, and United Dairy suffered damages to its business in Pennsylvania. Gehling, 773 F.2d at 544; FOF 28-40, 50, 52-53. Even though Tyler Mountain is not located in Pennsylvania, U.S. Aragonite communicated with Tyler Mountain in order to convince Tyler Mountain to use Oshenite in its manufacture of plastic beverage containers for United Dairy, which U.S. Aragonite knew to operate out of Pennsylvania. FOF 41-45, 48, 51.

COL 32) With respect to the breach of warranty claim, Oshenite was purchased by United Dairy officials located in Pennsylvania. U.S. Aragonite engaged in extensive personal, electronic, and telephone communications with these officials in an effort to sell Osenite to them and was aware that the Oshenite would be used, at least in part, at United Dairy's Pennsylvania manufacturing facility. Arlandson, 792 F.Supp.2d at 698; FOF 28-35, 40, 46-49.

COL 33) With respect to the products liability claim, United Dairy was injured in Pennsylvania, U.S. Aragonite solicited United Dairy to use Oshenite by visiting and communicating with United Dairy officials located in Pennsylvania, and U.S. Aragonite was

17

aware that the Oshenite would be shipped to and used by United Dairy, at least in part, at its Pennsylvania manufacturing facilities. D'Jamoos, 566 F.3d at 102-04; FOF 28-54.

COL 34) On balance, the burden on U.S. Aragonite of litigating in Pennsylvania, a state that it visited several times and sent communications to in order to sell Oshenite, is low, Pennsylvania has an interest in adjudicating a dispute in which a company operating within its jurisdiction was the victim of false statements about a defective product, the judicial system has an interest in the efficient resolution of disputes, and plaintiffs have an interest in convenient and effective relief. Burger King, 471 U.S. at 476-77. The interests of the several states in furthering fundamental social policies is not implicated, beyond Pennsylvania's interest in ensuring that business dealings occurring within its borders do not involve misrepresentations or defective products. Id.

### D. Entering Default Judgment

COL 35) An application for entry of default judgment must contain evidence, by affidavits or documents, of: (1) the entry of default pursuant to Rule 55(a); (2) the absence of any appearance by any party to be defaulted; (3) that the defendant is neither an infant nor an incompetent, or absent due to military service; (4) that the defendant has been validly served with all pleadings; and (5) the amount of judgment and how it was calculated. Composition Roofers Local No. 10 Pension Fund v. VMG Grp., No. 12-343, 2012 WL 1207219, at *1 (D.N.J. Apr. 10, 2012).

COL 36) In deciding whether to enter default judgment, the court is to consider three factors: (1) prejudice to the plaintiff if default is denied; (2) whether the defendant appears to have a litigable defense; and (3) whether defendant's delay is due to culpable conduct. Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000).

COL 37) In making these determinations, the court accepts as true the well-pleaded factual allegations in the plaintiff's complaint, except those relating to damages, as though they were admitted or established by proof, as well as all reasonable inferences that can be drawn therefrom. Joe Hand Promotions, Inc. v. Yakubets, 3 F.Supp.3d 261, 270 (E.D. Pa. 2014). Conclusory allegations and the parties' legal theories or conclusions of law, however, are not entitled to the same presumption and are not deemed admitted. Id. at 270–71.

COL 38) Culpable conduct relates only to "actions taken willfully or in bad faith." Mike Rosen & Assocs., P.C. v. Omega Builders, 940 F.Supp. 115, 118 (E.D. Pa. 1996 ). Some courts have held the third factor to be neutral where the court "has no information related to the motivations" of the defendant "in failing to appear and defend," while others have found that "the defendant's failure or refusal to engage in the litigation process and to offer no reason for this failure or refusal may qualify as culpable conduct with respect to the entry of a default judgment-indeed, for the Court to conclude otherwise would be to reward the recalcitrant or the oppositional and uncooperative." State Farm Fire & Cas. Co. v. Hunt, No. 14-06673, 2015 WL 1974772, at *3 (E.D. Pa. May 4, 2015) (citing decisions).

COL 39) When a plaintiff prevails by default, he or she is not automatically entitled to the damages originally demanded. Barnes v. Mahamadou, No. 14-1437, 2015 WL 2070208, at *2-3 (M.D. Pa. May 4, 2015) (citing Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990)). Defaults are treated as admissions of the facts alleged, but a plaintiff may still be required to prove that he is entitled to the damages sought. DIRECTV Inc. v. Pepe, 431 F.3d 162, 165 (3d Cir. 2005); Rainey v. Diamond State Port Corp., 354 F. App'x 722, 724 (3d Cir. 2009).

COL 40) The record reflects that default was entered pursuant to Rule 55(a). FOF 5.

COL 41) The record reflects the absence of any appearance by U.S. Aragonite, despite

19

notice of this lawsuit and of the default judgment proceedings. FOF 5.

COL 42)   The record reflects that U.S. Aragonite is an LLC, and cannot be an infant or an incompetent, or absent due to military service. FOF 14-26.

COL 43)   The record reflects that U.S. Aragonite was validly served with the summons and complaint and notice of the default judgment proceedings but failed to answer or participate. FOF 8-9, 14-22; COL 4-6.

COL 44)   The record includes documentary and testimonial support for the amount of damages sought and how damages were calculated; i.e., with respect to United Dairy, $263,522.34, and with respect to Tyler Mountain, $18,658.20. FOF 10-11, 13, 50-54.

COL 45)   On balance, plaintiffs would be prejudiced if default judgment is not entered because U.S. Aragonite has failed to participate in this litigation, there is no evidence that U.S. Aragonite has a litigable defense, and the court concludes that U.S. Aragonite's delay is due to culpable conduct because U.S. Aragonite received notice of this action and these default proceedings, but refused to participate in them. Even if the third factor was deemed neutral, the court would still conclude that entry of default judgment is proper in this case.

Dated:  September 11, 2015

BY THE COURT:

*/s/ Joy Flowers Conti*
Joy Flowers Conti
Chief United States District Judge